J-A06036-23

2023 PA SUPER 51

| STARLEEN MATTEO, ON BEHALF OF HERSELF AND ALL OTHERS IN THE STATE OF PENNSYLVANIA SIMILARLY SITUATED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| :--- | :--- | :--- |
| Appellant | : | |
| v. | : | No. 733 WDA 2022 |
| EOS USA, INC. | : | |

Appeal from the Order Entered May 26, 2022
In the Court of Common Pleas of Erie County Civil Division at No(s):  No. 11936-2021

BEFORE:  OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:                          **FILED:  March 30, 2023**

Sharleen Matteo (Matteo) appeals from the order entered in the Court of Common Pleas of Erie County (trial court) that sustained EOS USA, Inc.'s (EOS) preliminary objections in the nature of a demurrer with leave to amend.[1]  Matteo argues that the trial court erred in sustaining the preliminary

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] On July, 29, 2022, this Court issued a Rule upon Matteo to show cause why this appeal should not be quashed as interlocutory since, generally, an order granting preliminary objections and granting leave to file an amended complaint is not an appealable, final order.  **See Lichtenwalner v. Schlicting**, 552 A.2d 302, 302 (Pa. Super. 1989).  In response, Matteo maintains that the order is final because any amendment to the complaint is futile where the trial court determined as a matter of law that the subject collection letter was not false, deceptive, or misleading, which is a primary

objections where she properly alleges violations of the Federal Fair Debt Collection Practices Act (FDCPA),[2] which is incorporated by reference into the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA),[3] because the subject dunning (collection) letter is false, deceptive or misleading.  We affirm.

We take the following factual background and procedural history from the trial court's May 26, 2022 opinion and our independent review of the record.

**I.**

In May 2021, EOS sent Matteo the subject dunning letter.  It read, in its entirety:

Statement Date: 05/22//21
EOS Account #: XXXX
Current Creditor: US Asset Management, Inc.
Original Creditor: Verizon

TOTAL BALANCE
$121.56

**NOTICE OF PAST DUE ACCOUNT**

---

claim of her action.  She notes that amending the complaint again will not alter the language of the letter and asks this Court not to place "form over function" and to permit the appeal to proceed.  Under the circumstances, where the court's order effectively puts Matteo out of court, we will treat the May 26, 2022 order as final.  ***See Pugar v. Greco***, 394 A.2d 542 (Pa. 1978) ("if the practical consequence of the order by the trial court is effectively to put an appellant 'out of court' the order will be treated as final.  Similarly, an order is 'final' if it precludes a party from presenting the merits of his claim to the lower court.").

[2] 15 U.S.C. §§ 1692-1692p.

[3] 73 P.S. §§ 2270.1-2270.7.

> At EOS CCA we have a goal of helping consumers gain financial freedom and we believe it starts with a willingness to work with you on your account that has been placed with us for collections.
>
> You are receiving this notice because payment is past due on the above referenced debt originally owned by VERIZON.
>
> We understand and that having an account placed with a collection agency can be difficult. Please be advised we are here to assist and help you. If you cannot pay your balance in full then simply call us at 1-214-XXX-XXXX or 1-844-XXX-XXXX and we can discuss other options with you.
>
> *   *   *
>
> This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

(Amended Complaint, at Exhibit A, Notice of Past Due Account) (phone numbers and contact information redacted).

Matteo commenced litigation by filing a complaint against EOS on September 3, 2021. In response to preliminary objections, she filed an amended complaint on November 5, 2021. The trial court explains:

> Matteo filed this Complaint seeking relief under the FCEUA and specifically alleging that the Notice of Past Due Account was a false, deceptive, or misleading communication because it purported to try to collect on debt that was beyond the statute of limitations and beyond the time for reporting to the credit bureaus. (***See*** Amended Complaint, at ¶ 7). Matteo also avers that the communication is false, deceptive, or misleading because it offers to "work" with her and offers "other" options to pay the amount due, but does not specify that the statute of limitations applicable to the debt had expired, or what the ramifications of exploring "other options" might be. Matteo further alleges that the communication was misleading or deceptive because it did not indicate that Matteo could not be sued on the debt. (***See id.*** at ¶¶ 7(a), 8 & 10). The Amended Complaint does not allege that

- 3 -

[EOS] threatened Matteo with litigation on the debt. Additionally, the Complaint alleges that [EOS] failed to provide Matteo with the validation of debt notice required by 15 U. S.C. § 1692(g). (*See id.* at ¶ 6). The Amended Complaint seeks class action status and requests relief on behalf of Matteo and all others similarly situated.

The Amended Complaint does not aver that Matteo suffered any direct damages as a result of the attempt to collect on the debt. Rather, the Amended Complaint seeks statutory damages and injunctive relief precluding [EOS] from sending dunning letters to any Pennsylvania citizen beyond the expiration of the statute of limitations associated with their debts. (*See id.* at Wherefore Clause).

(Trial Court Opinion, 5/26/22, at 3) (some record citation formatting provided).

On November 16, 2021, EOS filed preliminary objections to the amended complaint. It argued: (1) its conduct in sending the collection letter to Matteo on an allegedly time-barred debt without disclosing that it was time-barred does not violate the law; (2) it was not required to send a validation notice because the May 11, 2021 letter was not the first one it sent to Matteo;[4] (3) Matteo failed to allege that she suffered an ascertainable loss as required by the Unfair Trade Practices and Consumer Protection Law[5] (UTPCPL), which

---

[4] In her brief to this Court, Matteo states that in her amended complaint, she averred that EOS violated the FDCPA by failing to provide the required validation notice. (*See* Matteo's Brief, at 11); 15 U.S.C. § 1692(g) (debt collector shall send debt validation notice within five days of initial communication with consumer). However, she offers no argument about this and appears to have abandoned the claim on appeal other than the brief mention.

[5] 73 P.S. §§ 201.1-201.10.

is applicable to her FCEUA claim; and (4) class certification is inappropriate because the proposed class is unidentifiable and FCEUA claims cannot serve as a basis for class actions since such claims require a showing of reliance. (EOS Preliminary Objections to Amended Complaint, 11/16/21, at ¶¶ 15, 17-23, 26, 29). Thereafter, both parties filed memoranda of law, and the court held oral argument by telephone on January 28, 2022.

On May 26, 2022, the court sustained the preliminary objections in part and found they were moot in part. (**See** Order, 5/26/22). Specifically, after a review of the relevant law, the court concluded: (1) Matteo failed to plead sufficient facts to support a claim for a violation of the FDCPA and FCEUA and it is denied as a matter of law; (2) because the FCEUA does not provide a private cause of action, but is enforced through the remedial provision of the UTPCPL, Matteo was required to plead an ascertainable loss, which she failed to do; and (3) because Matteo failed to state a claim entitling her to relief, the arguments about the class action are moot and/or premature. **See** Trial Ct. Op., at 9-12). Matteo timely appealed and complied with the court's order that she file a statement of errors complained of. **See** Pa.R.A.P. 1925(b).

On appeal, Matteo argues that the court erred in sustaining the preliminary objections[6] because she has properly alleged that "the dunning

_____

[6] Our standard of review of this matter is well-settled:

letter is false, deceptive or misleading." (Matteo's Brief, at 11). She also maintains that the court erred in finding that she was required to plead ascertainable loss pursuant to the language of the UTPCPL because the amended complaint relies on violations of the FDCPA as enforced through the FCEUA, making the UTPCPL irrelevant.[7] (*See id.* at 25-31).

## II.

## A.

Matteo argues that the dunning letter was false, deceptive or misleading because "it offered financial freedom even though such freedom had already been obtained by virtue of the statute of limitations" and it stated that EOS "was there to 'help' and 'assist' the debtor." (Matteo's Brief, at 12-13). She also complains that the invitation to call to discuss other options is an invitation for settlement and failed to inform her "that the debt is time-barred

---

Our standard of review in an appeal arising from an order sustaining preliminary objections in the nature of a demurrer is *de novo*, and our scope of review is plenary. We recognize a demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law; we must therefore accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. A preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted.

*Laret v. Wilson*, 279 A.3d 56, 58 (Pa. Super. 2022) (citation and brackets omitted).

[7] Matteo does not challenge the class certification issue.

and the ramifications thereof." (***Id.*** at 13). The trial court found that because the FDCPA does not prohibit attempting to collect a time-barred debt or require debt collectors to explicitly inform consumers that the debt is no longer legally enforceable, the mere fact that EOS did not inform Matteo of the legal status of the debt does not state a claim for an FDCPA and FCEUA violation. (***See*** Trial Ct. Op., at 8-9).

We provide the following legal background relevant to Matteo's issue.

**1.**

Pursuant to Pennsylvania's FCEUA, "[i]t shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the [FDCPA.]" 73 P.S. 2270.4(a). Congress enacted the FDCPA to deter "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). The statute prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including falsely representing "the character, amount, or legal status of any debt." ***Id.*** at §§ 1692(e), (f).

> The FDCPA is remedial, so we construe its language broadly, so as to effect its purpose. In addition, we employ a "least sophisticated debtor" standard to evaluate whether a particular debt-collection practice violates the Act. This standard aims to protect the gullible as well as the shrewd, but it nevertheless preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care. The standard is objective, meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be.

***Tatis v. Allied Interstate, LLC***, 882 F.3d 422, 427 (U.S. Court of Appeals

3rd Cir. 2018) (brackets and internal citations and some quotation marks

omitted; emphasis in original).[8, 9]

As aptly noted by the trial court, federal decisions on this issue are

evolving about what language can improperly mislead or deceive an

unsophisticated debtor.[10]   For example, in ***Huertas v.* Galaxy Asset**

**Management**, 641 F.3d 28 (3d Cir. 2011), a debt collector sent the plaintiff

a letter in which it sought to collect a credit card debt after the statute of

limitations' expiration.   The ***Huertas*** Court noted that although the Third

Circuit had not previously addressed the issue, precedent from other

jurisdictions has held that "the FDCPA permits a debt collector to seek

voluntary repayment of the time-barred debt so long as the debt collector

---

[8] "On issues of federal law, we are free to consider federal court decisions as persuasive authority." ***Zaleppa v. Seiwell***, 9 A.3d 632, 638 n.8 (Pa. Super. 2010) (citations omitted).

[9] To prevail on her FDCPA claim, a plaintiff must plead and prove that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." ***Tatis***, 882 F.3d at 427 (internal citation and most quotation marks omitted).  Instantly, only the fourth element is disputed.

[10] Matteo's claim that the court failed to broadly interpret the FCEUA is not persuasive.  The trial court thoroughly addressed applicable law interpreting the statute and applied it accordingly.  (***See*** Trial Court Opinion, 5/26/22, at 5-8).

**does not initiate or threaten legal action** in connection with its debt collection efforts." ***Huertas***, 641 F.3d at 33 (emphasis added).

Since ***Huertas***, the Third Circuit has read the FDCPA more broadly and concluded that, even absent a threat of litigation on a time-barred debt, a collection letter can violate the FDCPA.

For example, ***Tatis*** recognized that the threat of legal action was not required for a collection letter to potentially violate the FDCPA because it "sweeps far more broadly" and prohibits "**any** false, deceptive, **or misleading representation**" associated with debt-collection practices. ***Tatis***, 882 F.3d at 428 (emphasis in original). It observed that "a communication subject to the FDCPA is deceptive if it can be reasonably read to have two or more different meanings, one of which is inaccurate." ***Id.*** at 429 (citation omitted).

***Tatis*** agreed with its "sister courts that, in the specific context of a debt-collection letter, the least-sophisticated debtor could be misled into thinking that 'settlement of the debt' referred to the creditor's ability to enforce the debt in court rather than a mere invitation to settle the account." ***Id.*** at 429 (citing ***Buchanan v. Northland Group, Inc.***, 776 F.3d 393, 395 (6th Cir. 2015); ***McMahon v. LVNV Funding, LLC***, 744 F.3d 1010, 1022 (7th Cir. 2014)). It explained the significance of the use of the term, "settle":

> As the ***Buchanan*** court's survey of sources suggests, multiple dictionaries define "settle" to refer not only to "settling accounts," but also to the avoidance or resolution of litigation. ***See*** [***Buchanan***,] 776 F.3d at 399. Moreover, the chance that the letter could mislead the least-sophisticated debtor increases with the use of phrases such as "settlement offer," which *Black's*

*Law Dictionary* defines as "[a]n offer by one party to settle a dispute amicably (usu[ally] by paying money) to avoid or end a lawsuit or other legal action."  (10th ed. 2014).

*Tatis*, 882 F.3d at 429-30.

*Tatis* declined to hold that using the word "settlement" is misleading or deceptive as a matter of law and, instead, established a totality of the circumstances approach, noting, "that any such letters, **when read in their entirety**, must not deceive or mislead the least-sophisticated debtor into believing that she has a legal obligation to pay the time-barred debt."  *See Tatis*, 882 F.3d at 430 (emphasis added).  Applying this standard, the court reversed the trial court's order granting Allied's motion to dismiss, finding that *Tatis* stated a facially plausible claim for relief since, considering the letter as a whole, "the words 'settlement' and 'settlement offer' could connote litigation, and the least-sophisticated debtor could be misled into thinking Allied could legally enforce the debt."  *Id.* (citations omitted); *see also Buchanan*, 776 F.3d 393 at 398-400 (same); *McMahon*, 744 F.3d at 1022 (same).

The Third Circuit has not revisited this issue since *Tatis*.  However, in *Holzman v. Malcolm S. Gerald & Assoc., Inc.*, 920 F.3d 1264 (11th Cir. 2019), a case relied upon by Matteo, the court considered a collection letter that contained an offer to "resolve" a time-barred debt, urged the debtor to "take advantage" of the offer, stated that "payment must be received in our office no later than 5/31/2015" and that defendants are "not obligated to renew" the offer.  *Id.* at 1272 (internal quotation mark omitted).  The court

considered precedent from multiple jurisdictions and found that the plaintiff set forth a "plausible" argument that the letter violated the FDCPA. It noted that the fact that the debtor received an offer to "resolve" the debt rather than "settle" it was merely semantics, and that it was still "plausible" that the letter would leave an unsophisticated consumer with an inaccurate impression. *Id.* Further, "by urging the debtor to 'take advantage' of the offer, the letter might have caused an unsophisticated consumer to mistakenly believe that the debt was legally enforceable and that he had something to gain by accepting the offer, or to lose by declining it[,]" an impression reinforced by announcing a deadline, thus creating urgency. *Id.* at 1272.

## 2.

As stated previously, Matteo maintains that the letter was false, deceptive and misleading because (1) it offered financial freedom where she already had obtained it by virtue of the statute of limitations' expiration, but it failed to inform her that "the debt is time-barred and the ramifications thereof;" (2) it used words like, "help" and "assist," although "a debt collector is not in the business of helping a debtor;" and (3) it invites her to settle by calling to discuss "other options." (Matteo's Brief, at 13). EOS responds that it was not required to disclose that the debt was time-barred, and the letter is not otherwise false, deceptive or misleading. (*See* EOS's Brief, at 9).

First, we observe that the statute of limitations' expiration does not invalidate a debt, but just makes it legally unenforceable. *See Huertas*, 641

- 11 -

F.3d at 32.[11] As long as the debt collector does not initiate or threaten legal action on a time-barred debt, it is permitted to seek voluntary repayment without advising that the statute of limitations has run. *See id.*; *see also Tatis*, 882 F.3d at 430 (The Third Circuit does not "impose any specific mandates on the language debt collectors must use such as requiring them to explicitly disclose that the statute of limitations has run."). Instantly, EOS did not threaten litigation on a time-barred, legally unenforceable debt but, instead, sought Matteo's voluntary repayment. Therefore, it was not obligated to advise her about the statute of limitations.[12]

_____

[11] Some states, namely Mississippi, North Carolina and Wisconsin, in their implementing statutes, have found that collection contacts on time-barred debt violate the FDCPA. *See* Miss. Code Ann. § 15-1-3(1); N.C. Gen. Stat. § 58-70-115(4) (applies only to debts owned by debt buyers); Wis. Stat. § 893.05.

[12] Not raised in this action is whether the notice is deficient because it does not disclose that partial payment may result in "restarting the statute of limitations." It is well settled that a partial payment made or authorized by a debtor tolls the statute of limitations. *Citicorp North America, Inc. v. Thornton*, 707 A.2d 536, 538 (Pa. Super. 1998) (citing cases). "Partial payment stops the running of the statute because it is an acknowledgment of the debt as an existing obligation…" *Id.* at 538. The partial payment serves to "restart" the statute of limitations. *Id.* "There can be no more clear and unequivocal acknowledgement of debt than actual payment[.]" *Huntingdon Finance Corp. v. Newtown Artesian Water Co.*, 659 A.2d 1052, 1054 (Pa. Super. 1995). However, for the doctrine to apply, there can be "no uncertainty either in the acknowledgement or in the identification of the debt; and the acknowledgement must be 'plainly referable' to the very debt upon which the action is based[.]" *Id.*

However, Matteo urges us to find that EOS's offer is tantamount to a settlement offer that suggests the resolution of litigation. Reading the letter as a whole, this is an unreasonable interpretation. It is undisputed that the dunning letter does not expressly say, "settle" and carry the resulting inference of litigation. *See Tatis*, 882 F.3d at 429-30. Nor does the letter encourage Matteo to "take advantage" of the offer to "resolve" the debt by remitting a specific amount or create any sense of urgency by including a deadline for doing so. *Holzman*, 920 F.3d at 1264, 1272.[13] The letter merely suggests that Matteo call EOS, at which time options can be discussed.

Moreover, even if it did expressly or implicitly contain an offer to settle, this, standing alone, would not render the letter false, deceptive or misleading

_____

[13] Matteo also relies on *Manuel v. Merchants & Prof'l Bureau, Inc.*, 956 F.3d 822 (5th Cir. 2020), for the proposition that a technically accurate collection letter can mislead if it fails to disclose that a debt is time-barred, even where no settlement was offered. However, *Manuel* reached its decision only after considering the subject letter when "read as a whole." *Manuel*, 956 F.3d at 831. The letters contained language that included "Important Warning;" "You have only one more opportunity to stop all collection efforts;" "This is a very special offer. Please take advantage of this now;" "Our client has authorized the elimination of this element of your credit history but we need to receive your complete payment immediately!"; and "Urgent!" *Id.* Importantly, the court noted that because "the letters in question were misleading for more than their mere silence as to the age and the time-barred nature of the debt, we leave for another day whether such silence on its own is misleading as a matter of law." *Id.* at 824. *Manuel* is not persuasive because this case is factually distinguishable where it contained no such urgent language. As a legal matter, *Manuel* is consistent with *Tatas* in that it viewed the letter's language in its totality to reach its decision and made no finding as to whether mere silence regarding the statute of limitations is misleading as a matter of law.

- 13 -

because there is nothing improper about a settlement offer. ***See Tatis***, 882 F.3d at 430. Instead, the proper question is not whether the letter offers to settle the debt, but whether, when reading the letter as a whole, it would "deceive or mislead the least-sophisticated debtor into believing that she has a legal obligation to pay the time-barred debt." ***Id.*** (citations omitted). We discern no such reasonable interpretation.

The brief letter advises Matteo that she has a past-due debt from Verizon that EOS, as a debt collector, is attempting to collect. It offers to help her find a way to pay. As noted by the trial court, the phrases, "willingness to work with you" and "discuss other options" cannot reasonably be read to imply a threat of litigation. We agree with the trial court's finding that there is no reasonable argument that the letter could deceive or mislead even the least sophisticated debtor into believing she had a legal obligation to pay the time-barred debt or that EOS was threatening litigation should she fail to do so.[14] ***See Tatis***, 882 F.3d at 427 (least sophisticated debtor standard protects "the gullible as well as the shrewd, but it nevertheless preserves a quotient of

---

[14] Relatedly, Matteo urges this Court to hold, as a matter of law, that "all attempts to collect a time-barred debt without disclosing [that it is time-barred] are misleading pursuant to the FCEUA [and FDCPA]." (Matteo's Brief, at 19) (emphasis omitted). We decline to do so, particularly where the Third Circuit has expressly stated that a debt collector can seek voluntary repayment without advising about the statute of limitations. ***See Tatis***, 882 F.3d at 430.

reasonableness and presumes a basic level of understanding and willingness to read with care.").[15]

**B.**

Matteo claims that the trial court erred in finding that she failed to set forth an ascertainable loss to support her claim as required by the UTPCPL because she is seeking damages through the FDCPA, which does not require such loss.[16] She argues that the FCEUA is a bifurcated statute, which relies on state law for creditors and federal law for debt collectors, thereby making the FDCPA applicable for enforcement, not the UTPCPL.

While we agree with Matteo that a "reference to a statute in another statute includes the entire statute, we disagree with her application of this maxim because her argument completely ignores the express language of the FCEUPA's enforcement provision. We acknowledge that pursuant to the

---

[15] Matteo maintains that the court erred in deciding this issue because whether the letter is false, deceptive and misleading generally is a question of fact for the jury. (**See** Matteo's Brief, at 17-19). However, her argument acknowledges that "dismissal at the pleading stage is [] appropriate when the letter would not mislead a significant faction of the population," and then repeats her arguments about why the letter is misleading. (**Id.** at 17) (citing **McMahon**, 744 F.3d 1020). As stated above, there is no reasonable argument that the letter could be interpreted as false, deceptive or misleading to the least sophisticated debtor. Therefore, the trial court properly found that the letter was not false, deceptive or misleading as a matter of law.

[16] This issue is moot based on our conclusion that Matteo failed to establish that the letter was false, deceptive or misleading under the FDCPA. However, we briefly address the issue for the sake of full review.

FCEUPA a violation of the FDCPA constitutes an unfair or deceptive debt collection act or practice under FCEUA. ***See*** 73 P.S. § 2270.4(a). However, the FCEUA does not have its own private cause of action. Instead, pursuant to the enforcement and penalties provision of Section 2270.5 of the FCEUA, "If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, **it shall constitute a violation of the [UTPCPL]**." 73 P.S. § 2270.5(a) (emphases added). In other words, if a debt collector violates the FDCPA, it is an unfair or deceptive debt collection act under the FCEUA, which is a violation of the UTPCPL.

> The inclusion of a violation of the FCEUA as also being a violation of the UTPCPL, evinces a clear **intent by our Legislature that FCEUA claims be treated in the same manner as other private action claims under the UTPCPL**. … As a private action under Section 201–9.2 of the UTPCPL, **FCEUA claims therefore must plead that a plaintiff suffered an ascertainable loss**[17] as a result of a defendant's prohibited action.

***Kern v. Lehigh Valley Hospital, Inc.***, 108 A.3d 1281, 1290 (Pa. Super. 2015) (citation omitted; some emphases added);[18] ***see also Kaymark v.***

---

[17] Pursuant to the UTPCPL, "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby **suffers any ascertainable loss** of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 31 of this act, may bring a private action to recover [] damages …." 73 P.S. § 201-9.2 (emphasis added).

[18] Matteo argues that ***Kern*** is inapplicable because, in that case, the defendant was a creditor, not a debt collector, and she seeks to draw a distinction in the manner of enforcement applicable to a creditor (state) versus a debt collector (federal). However, as set forth above, only the enforcement section of the

*Bank of America, N.A.*, 783 F.3d 168, 182 (3d Cir. 2015), *abrogated on other grounds*, *Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct. 1029 (2019) ("The FCEUA … does not provide its own private cause of action; rather, it is **enforced through the remedial provision of the UTPCPL**[;] … claims therefore must plead that a plaintiff suffered an ascertainable loss *as a result of* a defendant's prohibited action.") (citation omitted; some emphasis added); 73 P.S. § 201-9.2(a).

Matteo attempts to avoid this clear mandate by claiming that she is seeking damages through the FDCPA and, therefore, she need not demonstrate any ascertainable loss. This argument is not persuasive. Matteo only raised one claim in her amended complaint, and it was for a violation of the FCEUA. (*See* Amended Complaint, at Count I). Moreover, even if she had included a count for violation of the FDCPA, it would have failed where the subject letter was not false, deceptive or misleading. For all of these reasons, this issue lacks merit.[19]

Order affirmed.

_____

FCEUA requires an individual to proceed under the UTPCPL and expressly includes actions against both creditors and debt collectors. **See** 73 P.S. § 2270.5(a).

[19] Matteo sets forth an additional section for her argument that a plaintiff is not required to plead reliance and ascertainable damage to recover under the FDCPA. (**See** Matteo's Brief, at 30-31). This is repetitive and irrelevant since, as stated above, her only claim was under the FCEUPA. (**See** Amended Complaint, at 6).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/30/2023</u>